### MARSIGLIA v. EASTERN AIR LINES, Inc., et al.

Industrial Commission.

May 24, 1955.

Frank F. Cosgrove and Charles F. Lindsay, both of Miami, for claimant.

Lawrence G. Lally, Miami, for the employer and insurance carrier.

### BY THE COMMISSION.

This cause came on to be heard upon application for review by claimant of a deputy commissioner's order dated January 4, 1955. On February 26, 1951 claimant received an injury by an accident arising out of and in the course of his employment when he struck the base of his spine on the corner of a work bench. The carrier provided medical benefits and compensation, including 35 weeks compensation for a permanent partial disability of 10 per cent of the body as a whole. Thereafter, in 1953, claimant filed a claim for further benefits. The result of these proceedings was an award by the deputy wherein he found that the claimant was temporarily totally disabled and ordered the carrier to provide surgery. Pursuant to the order, an operation was performed for the removal of a herniated disc between the fifth lumbar vertebra and the sacrum. The present proceedings were commenced on September 22, 1954 for additional compensation and medical benefits. The deputy entered an order denying the claim which is now before the commission for review.

This is a case of first impression since the Supreme Court decision in Ball vs. Mann, 75 So. 2d 758, involving an injury within the provisions of section 440.15(3)(u)—where the claimant has a functional disability but is earning the same or more wages than he did prior to the injury. The deputy found that the claimant's average weekly wages at the time of the accident were $80.22. He further found that he is presently employed by the same employer and has "returned to the same work that he was doing prior to the accident, with the exception that he is now limited to bench work on the day shift, is unable to lift the heavy airplane motor cowlings on and off the bench and has to seek assistance in this respect."

He also found that his earnings since returning to work are $88.13 per week. The record discloses that Dr. Francis W. Glenn, witness for claimant, testified that he has a 20 to 25 percent functional disability. Dr. Weiland, witness for the carrier, testified he has a functional disability of 20 percent. The deputy denied the claim for further permanent partial disability compensation, basing his conclusion on the fact that he is presently earning more than at the time of the accident—according to the deputy, present wages constitute the *sole* criterion for determining whether or not there has been a loss of earning capacity.

The Ball case involved a factual situation where the claimant was *unemployed* after the injury. Subsequent to that decision, it has been forcefully argued by carriers that the rule in the Ball case should have equal application to situations where the claimant's wages after the injury are equal to or greater than prior to the injury. To have consistent application of the rule, it is contended that where there is an unscheduled loss under section 440.15(3) (u), and there is no diminution of wages, the claimant is not entitled to permanent partial compensation, notwithstanding a functional disability. The definition of "disability" in section 440.02(9) is offered as further argument for this position—" 'Disability' means incapacity because of the injury to earn in the same or any other employment the *wages* which the employee was receiving at the time of the injury." (Italics added.) This position appears to have been incorporated in the deputy's order as his basis for denying this claim.

The Supreme Court in the Ball case employed the terms "earning capacity" and "wages" more or less interchangeably. Inasmuch as in that case the claimant was earning no wages at all, the interchangeable use of the terms was of no practical significance. In the case now before us, however, the claimant is presently receiving *more* pay than formerly. The difference in facts impels a further and closer scrutiny of the definition of "disability" in section 440.02(9). The term is not defined literally as a loss of "earning capacity" which is of considerably wider scope and import than the term "wages." It is defined, rather, as "incapacity . . . to earn . . . the wages which the employee was receiving at the time of the injury." If we are to test a claimant's capacity to earn wages solely by the amount of pay he is receiving at the time of the hearing, without regard to the probable impact against his capacity to continue to earn those wages in the future, then the carrier's contention and the rationale of the deputy's order is correct. Under such a test, there being no diminution of "wages," there is no disability within the meaning of the Act.

We are not in accord with such a strict and literal construction of the quoted section. A construction which restricts our inquiry to the present income of the injured employee and forecloses as a matter of law any inquiry, no matter how persuasive the evidence, with respect to future ability to earn, is inconsistent with the purposes of the Act.

The Supreme Court in the Ball case rejected functional disability as the sole test in cases arising under section 440.15(3) (u). The commission rejects, in this opinion, actual earnings after the injury as the sole test of disability. What standard, then, are we to furnish a deputy commissioner for the disposition of this type of case? Unquestionably, the purposes of the Act require that claims be disposed of with reasonable and practicable dispatch. On the other hand, the concept of "earning capacity" is complex and often can be determined only after long and costly hearings and investigations. We are faced with the administrative problem of giving reasonable effect to the rule in Ball v. Mann without unduly sacrificing dispatch in determining the injured employee's right to benefits. In our opinion, the following is a practical solution in cases arising under section 440.15(3) (u) —

Presumptively, a functional disability will, sooner or later, result in a loss of earning capacity. In the absence of sufficient rebutting evidence, the claimant's percentage of functional loss will be presumed to be the percentage of loss of earning capacity. It is open to the claimant to present evidence that his power to earn has been impaired to an extent greater than his functional disability. Similarly, it is open to the carrier to show that earning capacity loss is less than the functional percentage. The nature of the injury, the nature of the type of work engaged in, are factors to be considered. As in the case before us, the fact that present earnings are equal to or greater than before the injury, is relevant to the inquiry. This, however, is but evidentiary, and not controlling, and must be weighed against other evidence presented and also against the presumption that the effects of the injury have been deferred to the future. In the absence of sufficient evidence by either side, the functional rating should dispose of the matter. The burden of overcoming the presumption is on the moving party in the proceedings before the deputy.

The commission has reviewed the record in this case. Though, as stated above, we reject post-injury wages as being the *sole* test of earning capacity, the result reached by the deputy commissioner, applying the principles of this opinion to the evidence in the record, was in our opinion correct, and his order is affirmed.